Our fifth case for today is James Hunt v. Moore Brothers. Ms. Brine. May it please the court. My name is Jana Yoakum Brine, and this is an appeal of a district court order of 1927 sanctions against me that arose out of a southern district of Illinois case. And I will try to talk in the third person where possible, but with the court's permission, if I slip into first person, I... We understand. It's about you. So the test here is whether the district court based its decision on an erroneous conclusion of law. And in this case, the underlying case, I represented the plaintiff in a truck leasing scheme analysis that involved a company store scenario. There was an arbitration clause in the operating agreement at issue, and the provisions of the arbitration clause included a Nebraska choice of law provision and an integration clause. And the arbitration sentence included the words that it would be decided between an arbitrator mutually decided, mutually agreed to by agreement of the parties. Now, that's pretty common in arbitration agreements. And it's also common if the arbitration agreement falls under the scope of the Federal Arbitration Act, that from time to time, the parties don't manage to use that selection mechanism, so they default to Section 5. You know, why isn't that all completely routine? I didn't find that that was routine at all in my research. When I was researching this in response to the motion to compel originally, I noted the agreement to agree and the enforceability. Could you speak up a little? Certainly, Your Honor. I noted the unenforceable agreement to agree issue. You argued that in response to the original motion? I could not, because that would have made, under Nebraska law, the entire contract would have been unenforceable, and that issue is for the arbitrator. So it would have been inappropriate. I don't understand how you even get to the point where an arbitration agreement that says the parties will mutually agree on an arbitrator is an unenforceable agreement to agree. In the field of commercial arbitration, that sort of thing is common. In the field of international arbitration, it's common. It happens in labor arbitration. Well, it's routine to have we'll agree later on who the arbitrator is going to be, but what's not routine, at least in my experience, is to have the provision say only. We will arbitrate with somebody that we choose later without any provisions about anything else, cost, time, location, and on and on and on. I mean, there's been a lot of discussion about the green against U.S. cash advance case in this briefing. I will simply note as the author of the dissent in that case that it was not unanimous and that there are circuit splits on some of those issues. But you did not argue in the response to the original motion that the arbitration clause was an unenforceable agreement to agree. Right, because that would have been inappropriate. The unenforceability of the entire agreement was an issue for the arbitrator. Under Nebraska law, if the parties supply the missing term by their conduct, then the provision itself becomes unenforceable. And if the parties fail to supply the missing term, the provision itself becomes unenforceable. You have to read the Nebraska cases that were cited in order to understand this. But when that happened and the parties reached impasse, then there was an argument to be made that the arbitration agreement itself was unenforceable. And under Nebraska law... I don't understand that at all. I don't either. I mean, if you've got a viable arbitration clause, I don't see how one party can defeat it by simply refusing to agree on an arbitrator when Section 5 under the FAA gives you the default mechanism. Well, Section 2 is very clear that state law governs the arbitrability with regard to the enforceability of the arbitration clause. And Section 3 says that once the stay is entered, the case will proceed to arbitration in accordance with the terms of the agreement. Well, the case could not proceed to arbitration in accordance with the terms of the agreement. When I saw this issue, and the district court also saw this issue initially and discussed it, and denied the defendant's first motion to appoint an arbitrator on that basis, I... But you've just agreed that there has to be more to this than just impasse. Because there's a lot of buyer's remorse with arbitration clauses. And it can't be the case that an arbitration clause in an agreement can be defeated by somebody who decides once a dispute has arisen that they'd rather be in court. They just withhold their agreement to an arbitrator, presto, they're in court. That's not the way it works. States actually have arbitration laws that are similar to the FAA. The FAA is there if it's an arbitration agreement affecting interstate commerce. And the notion of the selection of the arbitrator is a procedural aspect of the arbitration itself. It's not something different. And actually, the courts regard arbitration clauses as, in a sense, severable from the remainder of the agreement. There's a lot that's particular to arbitration clauses, and I don't understand how your argument works. Well, Your Honor, that's why good faith I understand. And that's why on the day that the court ordered arbitration, I named a proposed arbitrator. No, it seems like you were doing what you should do. That was my job. I was doing my job. Did the defendants ever propose an arbitrator other than in Nebraska? They did not ever propose an arbitrator at all. That was the problem. And the discussion between us was, I'm waiting for you to propose the name of an arbitrator. And so the court was ready to do it. When they wouldn't do it, you would name somebody. The court was ready to step in and prevent them from impeding the resolution of the dispute by refusing to name an arbitrator. Well, actually, the court was not. It denied the defendant's second request to appoint an arbitrator. And the issue here is not whether my motion should have been denied. It's whether I should have been sanctioned. And the Green case is not controlling authority that's contrary to my position because it identified Section 2 as a safe harbor and cited the Concepcion case and the Marmon case as saying that enforceability of the arbitration clause is for the court and that that issue was not raised by those parties in that case. Also, Green. I want to actually take some exception. If you look at Judge Reagan's order, he doesn't name an arbitrator in the sense of saying, you know, what he says is he's not prepared to issue an order that takes place that's carried out in Nebraska, but he grants in part, he says he's ordering the parties to go before the American Arbitration Association subject to their rules for selecting an arbitrator when the parties can't agree. So he set up a structure under which the name of an arbitrator is going to come about. The AAA does this all the time. They pick an arbitrator that's got long rosters of people that they look at. So I don't think the district court refused. It's just it didn't, by name, choose somebody. Well, it didn't go according to the terms of the arbitration clause when it did that. Well, because the arbitration clause had been defeated by your opponent. Well, under Nebraska law, the arbitration clause, the problematic term cannot be severed. The entire clause has to be severed. That's Nebraska law, and the court did not review Nebraska law, and that was an error of law. If it would at least have discussed Nebraska law, it would have understood my argument, and my argument is clearly not sanctionable. And the Nebraska law you're talking about, is Nebraska law specific to arbitration contracts? No, basic contract law. If it were specific to arbitration contracts, then clearly. Sorry, are you saying Nebraska courts say if there's any unenforceable provision in a contract, the whole contract fails? Initially, but that the missing term can be supplied by the party's conduct or in writing after the fact to make it enforceable. And if the parties fail to supply the missing term, then it is unenforceable. Then the provision is unenforceable. If it's initially, initially the entire contract is unenforceable, I didn't raise that. I mentioned it to the court in terms of it's beyond the scope of the arbitration clause. But after the fact, the provision itself is unenforceable, and I've used up my rebuttal time. Thank you. Mr. Hedger. Mr. Hedger. May it please the court, counsel. Good morning, my name is Clark Hedger, and I'm here on behalf of the defendant, appellees, Moore Brothers, Inc. et al. In light of the court's questions to my opponent, I think it's appropriate to start with this notion of that appellant's position was objectively colorable or that she raised an issue that was not outside of the realm of reasonableness when she filed her motion to lift the state. And I don't think that's the right way to look at this. So why didn't you offer up a name? What we did, in fact, is we responded by saying we thought it would be better to arbitrate before the AAA. To do what, I'm sorry? I'm sorry, to arbitrate before the AAA. Before the American Arbitration Association. But you didn't offer a name, which is what this agreement appears to call upon you to do. Any arbitrator mutually agreed upon. You know, I don't like so-and-so, but we propose somebody else. We felt that the one and only arbitrator that she identified was a non-lawyer labor and industrial relations professor from the University of Illinois. Well, but that's the joy of arbitration. You don't have to deal with lawyers all the time. I agree with that. But when you have a claim like the anti-peonage claim, when you have a shrink in it. Okay, so you didn't like hers. So who did you propose? We proposed that we select an arbitrator through the AAA. The way that the AAA process works is to get a lift. And how did she respond? She said that she didn't want to do a AAA arbitration. Okay. So you're at an impasse. So we're at an impasse. So you go to the court. Well, she beat us to the courthouse, and then she filed her motion to lift. And after we responded to her motion to lift, we filed a separate motion to the district court asking the district court to appoint an arbitrator under Section 5. So what I'd like to get to is the notion that this argument was reasonable. And it wasn't reasonable. Her argument was not reasonable in terms of her motion to lift the stay. And it wasn't reasonable because the district court had already decided whether or not this case could be compelled to arbitration. I'm troubled by part of your brief, Mr. Hedger, because let me ask you, under your view of the law, would it have been an abuse of discretion for the district court to reconsider his earlier decision? Absolutely. Why? District courts reconsider all the time. Yeah. There's almost no decisions a district judge makes short of even including final judgments that can't be reconsidered. I don't understand your argument. You cite a bunch of language from cases saying, well, you can't use a Rule 60B motion, for example, to raise an issue for the first time or to rehash an argument you already presented. That doesn't leave much room for Rule 60B motions, yet they're granted from time to time. They are granted from time to time. And I don't even know why this is Rule 60B. It's not. Because I don't see why. It's not. That was the wrong label at a minimum and the wrong substantive hat. You use Rule 60 only after there's been a final judgment, which there certainly was not. And if you're just talking about general motions to reconsider, although they're not recognized in the Federal Rules of Civil Procedure, it is recognized as a matter of federal common law of procedure that district courts, of course, have the power to take another look at just about anything they've done, and we encourage them so that we don't have appeals like this one. No, and I understand that, but there are still standards. Well, first of all, we never argued for application of Rule 60. We argued for application of Rule 60. Well, what happens when two parties to an agreement like that simply cannot agree on an arbitrator? What happens? She says it should, you know, go back and become a regular litigation in the district court. I think what happens is that Congress has decided in Section 5. Pardon? Congress has decided in Section 5. If it's an agreement under the Federal Arbitration Act at all, which this one you assert is, the Federal Arbitration Act anticipates this kind of procedural problem in a case, whether it's a fundamental one, naming the arbitrator in the first place, whether it's the arbitrator died and nobody can figure out who should replace him or her, or whatever. There are also provisions about discovery support. There are a bunch of things, and you're talking about Section 5. I am. The point that I'm trying to make here is that whether or not decisions can be reconsidered, of course they can, but there are standards that govern when decisions can be reconsidered. What are they? What standard would have been violated if the district judge had, for example, reconsidered whether this was just an unenforceable agreement to agree with respect to arbitration? Well, because that argument could have been made in the first instance, and this Court has held in many cases that you have to wheel out all your artillery. Yeah, yeah. We say that in affirming decisions that deny relief, but we also affirm decisions that allow relief, where a district judge will allow a party to excuse a waiver. Right? That happens quite often. It does happen from time to time. And actually the point is we want the district judge to know what his or her discretion is. It's one thing to say, I know I have discretion, and you haven't given me a good enough reason to reconsider. At this level, we would normally defer to that kind of a call. It's quite another thing for the judge to say, my hands are tied. I can't do anything, when that may not be true. I don't think the judge said his hands were tied. I think the judge evaluated the arguments that she made and rejected them. Could you speak up? I don't think the judge took the position that he wasn't going to look at her arguments. Right, and he was entitled to do that. The question is whether it was sanctionable to make those arguments. It was sanctionable to make those arguments. I'm happy to go through each of the reasons why it's sanctionable. Well, I don't understand you. Suppose she just says she just doesn't agree with your choice of an arbitrator. What's your question? Isn't that what amounts to she's not agreeing with your suggested arbitrator? Yes. Was that improper? No, of course not. Well, then where do sanctions come in? Sanctions come in because she filed a brief that was objectively baseless under the law that the circuit has. I can't hear you. Could you speak a little louder? What she did that was sanctionable was by filing a brief that was objectively baseless. It was objectively baseless for four reasons, which we identify in her brief. It was objectionably unreasonable because the district court had spent 17 pages in its order compelling arbitration, identifying the law in this circuit on the AAA, or excuse me, on the Federal Arbitration Act. The district court had also discussed Green and Section 5. When the appellant filed her motion, she decided and opted not to confront all these authorities that went directly contrary to her position and acted as if none of these authorities existed and gave the court an exposition on Nebraska law once the district court had already decided that Nebraska law didn't apply. I thought she was disagreeing about who the arbitrator should be. So maybe you can clarify the extent to which this is just saying I don't want to go to the AAA and the extent to which she's saying Section 5 can't be used as a substitute because under Nebraska law, all this is is an agreement to agree and Nebraska doesn't recognize those. Her interpretation of Nebraska law is objectively frivolous. She miscites the cases. So your view is her notion of Nebraska law as standing in the way of using Section 5 of the Federal Arbitration Act is what's objectively frivolous? I think that part of it is objectively frivolous. I think her failure to identify the standard of review and to realize that the arguments that she did raise were waived. Of course, courts can decide whether or not to waive. This court has said in many cases that you at least have to identify the standard. You have to confront the authority that goes against you. You can't simply bury your head in the sand, pretend it doesn't exist, and then foist off on your opponents the obligation to do the research to demonstrate why it exists. Did she have a suggestion for an arbitrator or she just didn't want to have arbitration? She asked the court to vacate its order compelling. She named somebody that she wanted as an arbitrator, right, and you didn't want that person. Exactly, that's correct. So why doesn't that lead to an impasse? It doesn't lead to an impasse. I agree that there was an impasse, but I think the only opportunity and the only avenue that she had left in light of Judge Reagan's order was to move for the appointment of the arbitrator that she liked under Section 5. Nothing prohibited her from doing that. I think what your answer is actually is once there's an impasse, that's what triggers Section 5, and it throws it into the court's hands as to how it's going to get an arbitrator to move forward with the case, I think. That's what the court did anyway. Maybe you guys didn't like it. I'm not sure. Absolutely. I think I still have a minute or two of time here. Another important thing that she did. If the parties disagree about an arbitrator, why don't they just throw out the arbitration? Because the right to arbitrate is an important right that we negotiated for Well, it's not much of a right if you can't agree with the other side on the arbitrator. Excuse me? Well, if the two can't agree, I don't know what the right is worth. Well, I think if you look at the Green opinion, and I understand that there was a citation there, but there was a dissent there. But the fundamental import of Green was that if the parties express an intent to have their dispute arbitrated privately, then the court under Section 5 needs to defer to that intent, and if for any other reason an arbitrator cannot be appointed, then it's the court's role under Section 5 to get to and to identify how an arbitration should be conducted. So in that situation, who pays the arbitrator? It depends on what sort of arbitration form you select. But none has been selected. I mean, arbitration is at bottom a matter of contract, right? Absolutely. Was this an individually negotiated manuscript kind of contract, or was it a form? It was a form. Okay. So somebody drafted a contract to provide for arbitration without any provisions for cost, selection, and all of the other questions that are so material, and how is a district judge supposed to answer those questions as a matter of contract given this kind of a provision? And my question ultimately is whether it's frivolous to dispute whether this is an agreement to agree. Yes, I think it's frivolous to dispute whether it's an agreement to agree. Okay. You've got a circuit split on the question. Does that mean the other circuits are frivolous? You've got the Supreme Court never having gone as far as the dictum in green saying we want to arbitrate is enough. Why is that frivolous to disagree? I'm not exactly saying that that specific position is frivolous. I'm saying that the way that she attacked in her motion, the way that she filed her motion, the way that she failed to identify the standard, and the way that she forced it. So it's a bad brief rather than a bad position. Absolutely. That's what sanctions under 1927 are geared toward is vexatiously multiplying the proceedings. She filed a brief. Vexatiously multiplying, not clumsily multiplying. What costs were imposed on you by her withdrawal from the arbitration? With the withdrawal from the arbitration or her motion to lift the statute? Whatever it was. What costs were imposed on you by her behavior? We had to file a brief in response to a motion that was objectively frivolous as the district court concluded. Pardon? You had to file a brief? We had to file a brief in response to a motion that was objectively frivolous, that a reasonable attorney under the circumstances would never have filed. But I don't understand. If you can't agree on an arbitrator, how are you going to have arbitration? Well, the district court solved that problem by relying on Section 5 and appointing an arbitrator, or at least appointing an arbitral forum. But it's very odd. If the contract says you have to agree on the arbitrator, why do you want to bring a court in? Because Section 5 says if there is any lapse in the naming of the arbitrator, the federal court has the power to fill that gap. This is a state law notion about agreements to agree that shouldn't have any place in this analysis because it's governed by federal law. Mr. Hedger, if we affirm, are we going to see an argument that the appeal was frivolous? We've not made that argument, Your Honor. Good. Thank you. All right. Thank you very much, Mr. Hedger. I think your time also expired. If you would like one final minute, I will give it to you. This is not squarely in line with the circuit split cases dealing with the removal of the NAF as a forum. This is a separate issue dealing specifically in green. They identified the FAA as the applicable law. In this case, Nebraska was identified as the applicable law. And those cases didn't discuss Section 2, and green distinguished the idea that there might be an argument under Section 2. So it's not an issue of we don't have to decide all these issues today. The Supreme Court has dealt with Section 2 issues, and it hasn't dealt with the lapse in the NAF forum issues. This is not that case. I read those cases. This case is distinguishable from those cases, and it really is a different issue to me. And it shouldn't be governed by those cases. So it's not sanctionable for that reason. Also, the cost of that list of names through the FAA is substantial. When you could Google a southern Illinois arbitrator, and if they did, they would have found an exceptional one to which we both agreed, after I Googled it and said, hey, here's an exceptional one. But that was after all of this was decided. I appreciate your time. Thank you very much. Thanks to both counsel. We'll take the case under advisement.